UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN L. BLAKE,

    Plaintiff,

v.                                  Case No. 3:23cv8554-LC-HTC

LT. ORTEGA, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Kevin L. Blake filed this civil-rights action, asserting claims for excessive force and failure to intervene under the Eighth Amendment and seeking compensatory and punitive damages, among other relief.  Before the Court are Defendants Burkins, Carr, King, Ortega, Roeske and Michot's motions to dismiss Plaintiff's second amended complaint.  Docs. 37, 45.  Upon consideration of the relevant law, the motions, and Plaintiff's opposition, Doc. 55, the undersigned concludes the motions should be **GRANTED IN PART** insofar as they seek dismissal of Plaintiff's claim for compensatory damages.

I.  Background

Plaintiff's second amended complaint, Doc. 16, sets forth the following pertinent factual allegations, which are accepted as true for purposes of this Report and Recommendation.

On December 5, 2020, Plaintiff alerted correctional staff that the cup of beans from his religious diet program ("RDP") was half empty and the rest was spilled in the bag. Although he was promised the issue would be fixed, it was not; instead, he was offered a regular tray, which Plaintiff declined out of concern for being violated from his RDP. Later that day, Plaintiff attempted to pass a bag of RDP food to his next-door neighbor, but an officer snatched the bag from Plaintiff and threw it across the wing. Plaintiff attempted to plead with the officer to try to get his food back, but the officer said his food was thrown in the trash. "This led to an organized use of force" and an organized cell extraction, which was authorized by Defendant Lieutenant Ortega. *Id.* at 6.

The use-of-force began with administering chemical agents against Plaintiff. After getting sprayed with the chemical agents, Plaintiff told Ortega he was willing to comply with all orders but he just requested assurance with regards to his food. Ortega, however, disregarded Plaintiff and organized a five-man cell extraction team, which included Defendants Sergeant Roeske, Sergeant Burkins, Sergeant

King, Sergeant Michot, and Sergeant Aguire.[1]  Defendant Captain J. Carr was also present at the time.  Upon realizing he would not be receiving any assurances regarding his food, "Plaintiff began to wet the floor inside and outside his cell with soap and water to make it difficult for the team to enter;" he also barricaded the cell door with his mattress, pillows, and linens.  *Id.* at 16.  Also, "[t]o calm his nerves . . . Plaintiff began to smoke a joint of K2."  *Id.*

As the extraction team breached the cell, Plaintiff stepped to the back where he grabbed two regular food trays that were given to him "against his will."  *Id.*  He attempted to throw the trays to the side but was struck with a shield by Sergeant Roeske and "his back struck the back wall with enough force to cause injury."  *Id.*  Plaintiff was then "struck repeatedly on the top of the head, his face, neck, ribs, back, etc. with closed fists, hand restraints, and shackles."  *Id.*  This forced Plaintiff to attempt to defend himself, although he later ceased that attempt and tried to flee instead.  However, he only made it to the cell's doorway before he was forced back inside by Lieutenant Ortega, while Captain Carr and the other officers refused to intervene.

Plaintiff was then subdued in hand restraints behind his back and full body restraints.  As he laid restrained on his stomach, he could hear Ortega screaming to

---

[1] On January 31, 2024, the Court terminated Sergeant Aguire as a defendant under Federal Rule of Civil Procedure 4(m).

"stop resisting," while Plaintiff was not trying to resist. *Id.* at 17. At that point, "one or two of the officers, whom Plaintiff believes to be Sgt. Roeske, Sgt. Burkins, and Sgt. Aguire, began to intentionally attempt to break his fingers. Plaintiff started to scream out in agony as he felt his fingers popping one by one." *Id.* As Plaintiff screamed for the audio, "They're trying to break my fingers[,]" Ortega began to speak over Plaintiff, telling him again to stop resisting, although Plaintiff was not resisting. *Id.*

Plaintiff was eventually taken out of his cell and "roughly escorted" to the shower for decontamination, which was conducted by Defendants Roeske and King. *Id.* Afterwards, Plaintiff was taken to the nurse's office for a post-use-of-force examination. Although Plaintiff sustained injuries to his hands, fingers, mid- and lower back, head, face and other parts of the body, the attending nurse merely "cleaned the wound on the pointer finger of [Plaintiff's] right hand and placed a band-aid on it. Plaintiff informed him that he sustained several other injuries which he refused to document to cover for the officers [sic] intentional actions." *Id.* at 17–18. Between December 2020 and August 2021, Plaintiff filed numerous sick call requests "in an attempt to receive an X-ray on his right hand and back." *Id.* at 18. He ultimately received an X-ray on his right hand on February 10, 2021, and compared the results to an X-ray from July 15, 2020, concluding they were "substantially different." *Id.* Later, while he was at Florida State Prison Main Unit,

he also received an X-ray on his mid- and lower back on June 7, 2022; he compared those results with a radiology report he received at Madison C.I. on May 1, 2018, and concluded he "sustained injuries to his right hand and his back as a result of the cell extraction." *Id.* Plaintiff was never written a disciplinary report to justify either the use of chemical agents against him or the cell extraction. *Id.* at 19.

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.   Discussion

Based on the second amended complaint, Plaintiff is suing Defendants for excessive force or failure to intervene. Docs. 16 at 7, 17; 55 at 5. Defendants argue Plaintiff has either failed to state a claim as to any Defendant or, in the alternative, they are entitled to qualified immunity, and, in any event, compensatory and punitive damages are not available to him as relief. Docs. 37, 45. For the reasons set forth

below, the undersigned agrees with Defendants' position as to Plaintiff's claim for compensatory damages but disagrees with their remaining arguments.

### A. Failure to State a Claim Under the Eighth Amendment

Defendants' first argument for dismissal is that Plaintiff has failed to state an excessive force claim or a failure to protect claim against any Defendant. This argument fails as a matter of law.

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In determining whether force was applied maliciously and sadistically to cause harm, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, Plaintiff has alleged facts sufficient to state a claim for excessive force. Namely, as stated above, even though Plaintiff admits he was not entirely compliant

during the cell extraction, he also alleges one or more of the Defendants struck Plaintiff repeatedly on the top of the head, his face, neck, ribs, back, etc. with closed fists, hand restraints, and shackles. Additionally, he alleges the cell extraction itself was unnecessary. Moreover, he alleges one or more of the Defendants tried to break his fingers. The fact that officers may not have been successful does not mean that the force used was not excessive as a matter of law. Also, while Plaintiff may ultimately be unable to prove the facts alleged, given the low bar for motions to dismiss, the Court cannot say that Defendants are entitled to judgment as a matter of law on either the excessive force or failure to intervene claims.

### B. Qualified Immunity

Defendants also argue they are entitled to qualified immunity. However, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich*, 280 F.3d at 1301. A reasonable prison official would understand, at a minimum, that attempting to break the fingers of a fully-restrained inmate or allowing a coworker to do so without intervening would violate the Constitution. Defendants, therefore, are not entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims at this time.

### C. Compensatory Damages

Defendants next argue Plaintiff has failed to allege a greater than *de minimis* physical injury and is, thus, not entitled to compensatory damages. The undersigned agrees.

Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). Under § 1997e(e), a prisoner must prove he suffered a more than de minimis physical injury to recovery compensatory damages. *Thompson v. Smith*, 805 F. App'x 893, 900-01 (11th Cir. 2020) (citation omitted). Courts have described a more than de minimis injury as "an observable or diagnosable medical condition requiring treatment by a medical care professional." *Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (quoting *Luong v. Hatt*, 979 F. Supp. 481 (N.D. Tex. 1997)).

Here, even under a liberal construction, Plaintiff's purported injuries do not amount to anything more than *de minimis*. Plaintiff has alleged injuries to his "hands, fingers, mid- and lower back, head, face and other parts of the body," Docs. 16 at 18; 55 at 6, but he does not specify what any of these injuries are, does not claim they caused him any pain, discomfort, or other physical limitation, does not

allege the duration of any of the alleged injuries, and does not allege any required more than minimal medical treatment. *See Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (affirming dismissal because allegations of "vague injuries to [plaintiff's] back, [along with] scrapes and marks on his knees and legs" amount to *de minimis* physical injuries); *see also Pierre v. Padgett*, No. 4:15-CV-148-RH-GRJ, 2017 WL 11501005, at *5 (N.D. Fla. Feb. 15, 2017) (holding that "scratches, abrasions and some minor bruising, none of which required any medical treatment" did not constitute more than *de minimis* injuries), *report and recommendation adopted*, No. 4:15CV148-RH/GRJ, 2017 WL 870405 (N.D. Fla. Mar. 3, 2017), *adhered to on reconsideration*, No. 4:15CV148-RH/GRJ, 2017 WL 11501006 (N.D. Fla. Mar. 22, 2017), *and aff'd*, 808 F. App'x 838 (11th Cir. 2020).

Because Plaintiff's allegations do not cross the *de minimis* threshold, his claim for compensatory damages is barred by section 1997e(e) and should be dismissed.

**D.   Punitive Damages**

Defendants' final argument is that Plaintiff's request for punitive damages is barred by section 3626 of the PLRA, which states as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall

give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).  Punitive damages are included within the definition of "prospective relief" used in the statute.  *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

Defendants attempt to argue punitive damages categorically cannot satisfy the requirements of 18 U.S.C. § 3626(a)(1)(A) because: (1) "'correction' of [a] violation [of a federal right] is accomplished through compensatory damages and punitive damages are, by their nature, never corrective"; and (2) punitive damages cannot be "narrowly drawn," "extend no further than necessary," or be the "least intrusive means," to correct the violation of a federal right. Docs. 37 at 16; 45 at 15.  However, Defendants cite no binding precedent which holds that section 3626 prohibits the assessment of punitive damages in prison conditions cases.  And the Eleventh Circuit case they do cite, *Johnson*, indicates punitive damages are permitted in prison conditions cases.  *See* 280 F.3d at 1325 (finding section 3626's "requirements mean that a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case" and "that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so").  Thus, the current state of the law does not support the conclusion that section 3626 imposes a

categorical prohibition on an award of punitive damages. *See Benton v. Rousseau*, 940 F. Supp. 2d 1370, 1379–80 (M.D. Fla. 2013) (finding prisoner was entitled to $15,000 in punitive damages for violations of his First and Fourteenth Amendment rights).

Accordingly, it is RECOMMENDED:

1. That Defendants' motions to dismiss, Docs. 37, 45, be GRANTED IN PART, ONLY AS TO PLAINTIFF'S CLAIMS FOR COMPENSATORY DAMAGES.

2. That Defendants be ordered to file an answer to the second amended complaint within fourteen (14) days of the adoption of this Report and Recommendation.

3. That this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 18th day of March, 2024.

/s/ *Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.